IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ATLAS ELECTRICAL CONSTRUCTION, INC.,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br>(JURY TRIAL DEMANDED) |

## **NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 against Defendant Atlas Electrical Construction, Inc.("Atlas") to correct unlawful employment practices on the basis of sex and/or retaliation and to provide appropriate relief to the Charging Party Rubel Romero and other the aggrieved individuals. As alleged with greater particularity below, the Equal Employment Opportunity Commission alleges that Atlas engaged in unlawful discrimination by subjecting Romero and other aggrieved individuals to a hostile work environment because of their sex, male. Atlas also violated Title VII by retaliating against Romero when it denied his request to transfer and terminated his employment because he opposed the harassment and told Atlas he was going to file and then did file a formal charge of discrimination with the EEOC. Alternatively, Atlas constructively discharged Romero by creating such a hostile work environment that a reasonable employee would feel compelled to resign.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 704(a)(1), 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-3(a), 2000e-5(f)(1) and (3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of New Mexico.

## PARTIES

3. The EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-3(a), 2000e-5(f)(1) and (3).

4. At all relevant times, Atlas, a New Mexico corporation, continuously did business in the State of New Mexico, and the City of Albuquerque, and has continuously had at least 15 employees.

5. At all relevant times, Atlas has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Romero filed a charge of discrimination with the EEOC alleging violations of Title VII by Atlas.

7. The EEOC provided Atlas with notice of the charge of discrimination.

8. The EEOC investigated the charge of discrimination filed by Romero.

9. On May 22, 2018, the EEOC issued to Atlas a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Atlas to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. On August 7, 2018, the EEOC issued to Defendant Employer a Notice of Failure of Conciliation advising Atlas that the EEOC was unable to secure from Atlas a conciliation agreement acceptable to the EEOC.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## **FACTUAL ALLEGATIONS**

12. Romero was hired by Atlas on February 22, 2017 as an electrician's apprentice at the Christus/St. Vincent's Hospital worksite in Santa Fe.

13. His first day of work was February 27, 2017, and his last day of work was April 13, 2017.

14. Within a few weeks of Romero's hire, Atlas appointed Ruben Perez as the new Superintendent at the Christus/St. Vincent's Hospital worksite.

15. Superintendent Perez subjected Romero and other male employees to frequent, offensive, and unwelcome sexual remarks and sexual conduct.

16. For example, as Romero and other male workers clocked in every morning, Superintendent Perez talked about his "cock" and how "cum" tastes.

17. On at least one occasion, Romero went to the office at the worksite to get equipment or material for work. Superintendent Perez saw him, asked Romero what he was doing in the office, and asked Romero, "Did you come here to suck my dick?"

18. On at least two other occasions while Romero was working at the job site,

Superintendent Perez said to Romero, "You must have a big dick because your work is slow."

19. On another occasion, Superintendent Perez told Romero and co-worker Richard Rylee to "Bend over like that and I am going to put it in your ass" as they were carrying scrap metal to a dumpster.

20. Superintendent Perez also frequently called Romero a "fag" in front of Romero's co-workers.

21. While working with Superintendent Perez, Romero also frequently heard Superintendent Perez telling other male employees to "suck his dick" and to "pet my dick."

22. While working with Superintendent Perez, Romero also frequently heard Superintendent Perez make comments about the size of his penis, calling it his "cock", comments about "how guys do it in prison," and similar unwelcome sexual comments.

23. Upon information and belief, Superintendent Perez also physically grabbed or touched the penis of another male worker of Defendant.

24. On April 13, 2017, Romero's last day at work, there was a barbeque lunch offered at the site for the employees.

25. At the lunch, Superintendent Perez told Romero in front of several of Romero's co-workers that he was not "Rubel" but instead "Rubella," a "transvestite," and a "fag."

26. Later that same day, Romero went to the office to get a stud-puncher tool and Superintendent Perez asked Romero, "Did you come here to suck my dick?"

27. For Romero, these comments on April 13, 2017 were the last straw.

Romero felt compelled to leave the worksite because of the ongoing harassment.

28. Romero let his Foreman, Lawrence Carbajal know he was leaving because of Perez' behavior and that he was going to Atlas's Legacy Nursing Home construction site in Santa Fe to see if he could transfer there and to get away from Superintendent Perez.

29. Once Romero arrived at the Legacy worksite, he met with Atlas's Foreman, Manny Armijo.

30. Romero told Foreman Armijo about Superintendent Perez's daily sexual comments, and he told Armijo that Perez's treatment of him was the reason he left to come ask if could work at the Legacy worksite.

31. In response to Romero's request to come work at the Legacy worksite, Armijo told Romero that the transfer was ok with him, but Armijo would need the approval of his bosses, including General Superintendent Lara.

32. While Romero was still at the worksite, Armijo called and spoke with the General Superintendent Lara about Romero coming to work for him at Legacy. After the call, Armijo told Romero that the General Superintendent Lara would call you back later and let you know Atlas's decision.

33. At the end of the day on April 13, 2017, General Superintendent Lara telephoned Romero and Romero told General Superintendent Lara the what happened with Perez, the reasons he wanted to transfer to the Legacy job site was because of Perez and the reasons why he left the Christus/St. Vincent's Hospital worksite was to come work at the Legacy worksite under Armijo.

34. General Superintendent Lara then told Romero that Atlas's policy was to automatically terminate any employee who walked off a job site but ended the conversation by

telling Romero he would check with the owner and let him know about working at the Legacy worksite.

35. After a few days of not hearing from anyone at Atlas, Romero then left telephone messages for the owner of Atlas indicating he would like to talk about Perez and his request to transfer to the Legacy worksite.

36. Within a few days of leaving the phone message for the owner, Romero received a call from General Superintendent Lara. Lara told Romero that Atlas could not rehire him because he had walked off the worksite.

37. During that same call with General Superintendent Lara, Romero told him he was going to file a complaint about Perez with the EEOC. General Superintendent Lara told him not to file a charge so that he could talk to Atlas's owner first and try to work this out.

38. During the time Romero was waiting for General Superintendent Lara's resolution of his transfer to the Legacy worksite, Debbie Roberts was Atlas's controller/office manager responsible for human resources.

39. While Romero was still waiting to hear back from General Superintendent Lara, Debbie Roberts called Romero and instructed him to return Atlas's time recorder and safety equipment.

40. Based on this request from Debbie Roberts, Romero believed his request to transfer to the Legacy worksite was not approved by Atlas and that he was now fired.

41. Romero filed a charge of discrimination with the EEOC on April 18, 2017.

42. Romero next met with Roberts when he went to Atlas's main office to pick up his check and turn in his time recorder and safety equipment. Roberts told

Romero that this was not the first time that Perez had offended someone at work.

43. General Superintendent Lara arrived at the office while Romero was there, and he joined the meeting between Roberts and Romero. Roberts handed Superintendent Lara a copy of Romero's EEOC Charge and General Superintendent Lara told Romero that Atlas's owner was not happy about the charge of discrimination.

44. After Romero's previous telephone discussion about filing a complaint with the EEOC and then delivering a copy of the filed EEOC complaint, to Roberts and General Superintendent Lara, Lara never discussed what happened with his pending request to transfer to the Legacy site.

45. Instead of a transfer, General Superintendent Lara only reaffirmed Romero's discharge by wishing him well for the future.

46. Superintendent Perez' unwelcome conduct because of sex, male, created a hostile work environment for Romero and other male aggrieved individuals.

47. Romero complained about Superintendent Perez' unwelcome sexual conduct to Defendant's management and supervisory personnel, including Armijo, Lara and Roberts, but Defendant took no remedial action to correct the sexually hostile work environment at the Christus/St. Vincent's job site, as described in the foregoing paragraphs.

48. The sexual harassment was also done in such an open manner by the Superintendent at the Christus/St. Vincent that Atlas knew or should have known that Romero and other men were being subjected to a hostile work environment because of sex and failed to take remedial action to correct the hostile environment.

### STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF
[Sex-Based Hostile Work Environment – 42 U.S.C. § 2000e-2(a)]

49. Allegations contained in the foregoing paragraphs are incorporated by reference.

50. From at least February 2017 through the present, Atlas engaged in unlawful employment practices in New Mexico in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a), by subjecting Romero and other male aggrieved individuals to sexual harassment constituting a hostile work environment.

51. Despite complaints about the sexually harassing comments and conduct, Atlas permitted and tolerated this sex-based hostile work environment by a supervisory official and failed to take prompt or effective remedial action to correct it.

52. Atlas knew or reasonably should have known about the sexually harassing comments and conduct described above because it was openly perpetrated by the Superintendent Perez, a management official with hiring and firing authority within the company. Further, Atlas should have known due to the direct complaints it received and the open and notorious nature of the conduct.

53. Defendant failed to take prompt or effective action to prevent, correct, or remedy the sexually hostile work environment.

54. The effect of the practices complained of in the foregoing paragraphs has been to deprive Romero and other aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because of sex.

55. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

56. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to Romero's and other aggrieved individuals' federally protected rights.

**SECOND CLAIM FOR RELIEF**
[Retaliation – 42 U.S.C. § 2000e-3(a)]

57. Allegations contained in the foregoing paragraphs are incorporated by reference.

58. Atlas engaged in unlawful employment practices in its New Mexico offices and worksites in violation of Section 704(a)(1) of Title VII, 42 U.S.C. § 2000e-3(a), by taking adverse employment actions against Romero because Romero opposed an unlawful employment practice by complaining about unlawful sexual harassment.

59. Atlas's unlawful employment practices include (1) denying Romero a transfer because he was complaining to supervisory officials of Defendant about Perez' sexual harassment; and (2) terminating Romero's employment because Romero opposed the harassment because of sex and because Atlas learned Romero intended to and then did file a charge of discrimination with the EEOC, reporting the sexual harassment at the Christus/St. Vincent's job site.

60. The effect of the practices complained of in the foregoing paragraphs has been to deprive Romero of equal employment opportunities and otherwise adversely affect his status as an employee because of opposition to unlawful employment practices.

61. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

62. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to Romero's federally protected rights.

**THIRD CLAIM FOR RELIEF**
[Constructive Discharge Because of Sex– 42 U.S.C. 2000e-2(a)]

63. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

64. Alternatively, beginning in February 2017, Atlas discriminated against Romero in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by constructively discharging him because of sex.

65. At the time of his constructive discharge, Romero was performing his work in a satisfactory manner.

66. The hostile work environment became so intolerable that a reasonable employee would have felt compelled to resign.

67. The unlawful employment practice described above was intentional.

68. The unlawful employment practice of Defendant complained of herein was done with malice or with reckless indifference to Romero's federally protected rights.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Atlas, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any unlawful practice which discriminates against an employee because of their sex, male.

B. Grant a permanent injunction enjoining Atlas, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any unlawful practice which retaliates against any employee because he or she has opposed any practice made an unlawful employment practice by Title VII or because he or she has made a charge, testified, assisted, or participated in any manner in an investigation or proceeding under Title VII, including making any internal complaint of harassment.

C. Order Atlas to institute and carry out policies, practices, and programs that

provide equal employment opportunities regardless of sex and that eradicate the effects of its past and present unlawful employment practices.

    D.    Order Atlas to institute and carry out policies, practices, and programs that provide equal employment opportunities regardless of an individual's opposition to unlawful employment practices or participation in proceedings under Title VII and that eradicate the effects of its past and present unlawful employment practices.

    E.    Order Atlas to make whole Romero and other aggrieved individuals by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay as appropriate.

    F.    Order Atlas to make Romero and other aggrieved individuals whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job search expenses in amounts to be determined at trial.

    G.    Order Atlas to make Romero and other aggrieved individuals whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other non-pecuniary losses in amounts to be determined at trial.

    H.    Order Atlas to pay Romero and other aggrieved individuals punitive damages for its malicious or reckless conduct described above in amounts to be determined at trial.

    I.    Grant such further relief as this Court deems necessary and proper in the public interest.

    J.    Award the EEOC its costs of this action.

**JURY TRIAL DEMANDED**

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

RESPECTFULLY SUBMITTED this 25th day of September 2018.

                                                    JAMES LEE
Acting General Counsel

GWENDOLYN REAMS
Associate General Counsel

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street NE, 5th Floor
Washington, DC 20507-0004


MARY JO O'NEILL
Regional Attorney
Phoenix District Office
3300 North Central Avenue, Suite 690
Phoenix, Arizona 85012

LORETTA MEDINA
Supervisory Trial Attorney
Albuquerque Field Office

*/s/Jeff A. Lee*
Jeff A. Lee, OBA No. 13483
Senior Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Albuquerque Field Office
505 Marquette NW, Suite 900
Albuquerque, New Mexico 87102
(505) 248-5210
Jeff.lee@eeoc.gov

Attorneys for Plaintiff